**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FRANCOIS ABESSOLO,  Case No. 1:11-cv-680

    Plaintiff,  Spiegel, J.
 Bowman, M.J.

    v.

SARA SMITH, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

**I. Procedural Background and Pending Motions**

On September 1, 2011, Plaintiff Francois Abessolo, a Franklin County resident, filed a *pro se* complaint alleging that eight individual defendants, most of whom are Hamilton County employees, violated his constitutional rights during child custody proceedings. Based upon S.D. Ohio Civ. R. 82.1, the case was transferred on September 29, 2011 to the Western Division (Cincinnati) for all further proceedings. Pursuant to local practice, this case has been referred to the undersigned magistrate judge for initial review and a Report and Recommendation on dispositive motions.

In response to Plaintiff's original complaint, Defendants Lisa Daniel[1] and Sara Sams filed a motion to dismiss or in the alternative, for a more definite statement. (Doc. 11). The

---

[1]Ms. Daniel is incorrectly named as "Lisa Danielle in Plaintiff's complaint." (Doc. 10).

remaining six Defendants (Sarah Smith,[2] Mary Ayoki, Rhianna Hartwell,[3] Joni Stafford, Marjorie Davis, and Mark Sauer, hereinafter "County Defendants") also responded to the complaint by filing a motion to dismiss, or in the alternative, a motion to stay proceedings under the abstention doctrine. (Doc. 12). Soon thereafter, Plaintiff himself filed a motion for default judgment, citing the Defendants' alleged failure to file an answer. (Doc. 13).

After Defendants moved to dismiss his original complaint, Plaintiff also filed an amended complaint. (Doc. 17). Plaintiff's amended complaint prompted new motions to dismiss by Defendants (Docs. 18, 19), to which Plaintiff has filed responses in opposition (Docs. 20, 22), and Defendants Daniel and Sams have filed a reply (Doc. 21). Defendants Daniel and Sams also have moved to strike one of Plaintiff's responsive memoranda as an improperly filed sur-reply.[4] (Doc. 23).

Because Plaintiff has filed an amended complaint, Defendants' motions to dismiss his original complaint (Docs. 11, 12) should be denied as moot. Plaintiff's motion for default judgment (Doc. 13) also should be denied, because it is based on a fundamental misunderstanding of the Federal Rules of Civil Procedure.

The focus of this Report and Recommendation, then, is on Defendants' more recently filed motions to dismiss. (Docs. 18, 19). Because the majority of Plaintiff's claims relate to Plaintiff's ongoing state custody dispute concerning his biological children, over which this Court lacks subject matter jurisdiction, I recommend that Plaintiff's complaint be

---

[2] Ms. Smith is incorrectly named as "Sara Smith" in Plaintiff's complaint. (Doc. 10).

[3] Ms. Hartwell is incorrectly named as "Rhiannon Hartwell" in Plaintiff's complaint, but identified as "Rhianna Hartwell" by defense counsel.

[4] The Court has entered a separate order to address this non-dispositive motion.

dismissed in its entirety. All Defendants are also entitled to dismissal because Plaintiff has failed to state a claim against any named Defendant. Alternatively, should any reviewing court assume the existence of jurisdiction and/or the existence of a federal claim, I recommend that the current action be stayed until ongoing state court proceedings have been fully adjudicated.

## II. Factual Background

Although Mr. Abessolo has been represented by counsel in ongoing state custody proceedings, he proceeds *pro se* in this Court.[5] Plaintiff's amended complaint (Doc. 17) is very similar to his original complaint (Doc. 2), but Plaintiff's original complaint contains slightly different exhibits and allegations. Because Plaintiff proceeds *pro se*, the Court has construed Plaintiff's amended complaint as incorporating his original complaint in its entirety. Thus, when appropriate, the Court has cited to both complaints and attached exhibits to flesh out Plaintiff's factual allegations.

As best this Court can tell, the origins of the present dispute began in March of 2009, when the Hamilton County Job and Family Services (HCJFS) visited the residence of Ms. Akaba in Cincinnati, Ohio. Ms. Akaba is the biological mother and was then the custodian of Plaintiff Abessolo's two children. (Doc. 2-1 at 1). Plaintiff was not living with Ms. Akaba or present in the home at the time; he resides in Columbus, Ohio.[6] Mr. Christopher Engle co-habitated the home with Ms. Akaba in 2009; Mr. Engle is the

---

[5] Plaintiff does not proceed *in forma pauperis*, having paid the requisite filing fee. (Doc. 3). Therefore, his complaint was not subject to initial screening under 28 U.S.C. §1915.

[6] Plaintiff alleges that Ms. Akaba wrongfully assumed custody of the children prior to March of 2009, but those allegations appear unrelated to the claims presented by Plaintiff in this Court.

biological father to Ms. Akaba's third (infant) child. Plaintiff alleges that Mr. Engle also is a registered sex offender who is not permitted to have contact with any female under the age of 18. *Id.* The younger of Plaintiff's two children is female, as is Mr. Engle's own child.

On August 17, 2009, Defendant Sarah Smith, acting as an employee of the HCJFS, filed a request to remove all three children (Plaintiff's two children and Mr. Engle's child) from the Akaba/Engle home and to grant custody to HCJFS. The request stated that Mr. Abessolo was not in contact with his children, and did not support them. (Doc. 2-3 at 4). The two children were appointed a Guardian ad Litem, (Doc. 2-5 at 3) and placed in foster care for a period of time, but eventually were conditionally returned to the care of Ms. Akaba. (Doc. 12-3). As of October 3, 2011, state custody proceedings were still ongoing, with the next hearing scheduled for January 2012, and a final judicial decision as to the future of the children expected sometime in 2012.

Plaintiff's initial and amended complaints, construed together, generally allege that various Defendants have violated his rights as a parent, have discriminated against him, and have committed fraud on the state court. Plaintiff alleges that he has suffered emotional and physical abuse and mental torture over the course of two years, and that his biological children have been neglected by HCJFS and have suffered neglect and a variety of abuses at the foster home where they were placed, as well as at the home of their biological mother, Ms. Akaba. (Doc. 17 at 5).

**III. Analysis**

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants Lisa Daniel and Sarah Sams persuasively argue that the entirety of Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction. (Doc. 18 at 4). The gravamen of Plaintiff's complaint pertains to domestic relations and child custody issues, which are within the exclusive jurisdiction of the states and fall outside the scope of federal jurisdiction.

Plaintiff bears the burden of proving subject matter jurisdiction. *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2006) (citing *United States ex rel. McKenzie v. BellSouth Telecommunications*, Inc., 123 F.3d 935, 938 (6th Cir. 1997)). A review of Plaintiff's complaint as amended confirms that Plaintiff's allegations pertain exclusively to ongoing state custody and child welfare proceedings. Pursuant to O.R.C. § 2151.23, Ohio juvenile courts retain exclusive jurisdiction over matters involving child custody. More than a century ago, the United States Supreme Court proclaimed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus*, 10 S.Ct. 850, 853 (1890). Thus, under the *Burrus* abstention doctrine, federal courts have universally declined to exercise jurisdiction in domestic relations cases in which a complaint contains only conclusory assertions that a plaintiff is entitled to relief because of the state's constitutional violations, where those assertions are "a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze*, 76 Fed. App'x 615, 616 (6th Cir. 2002).

Plaintiff's amended complaint lists six claims or causes of action: (1) a violation of

5

Plaintiff's constitutional rights in child custody proceedings; (2) discrimination against Plaintiff in violation of the Fourteenth amendment "under the state color of law"; (3) fraud on the state court; (4) infliction of emotional and psychological stress and mental torture upon Plaintiff; (5) HCJFS's neglect of Plaintiff's children; and (6) infliction of sexual, mental, physical, and emotional abuse of Plaintiff's children while housed in foster care (Doc. 17 at 5). As stated, only the first two claims suggest any violation of Plaintiff's constitutional rights; to the extent any other claim is stated,[7] it is presumed to be grounded on state law. As relief for all six claims, Plaintiff seeks an order from this Court granting him custody of his children, and directing Defendants to financially compensate him for his and his children's alleged injuries. (Doc. 2 at 7; Doc. 17 at 9).

Ultimately, Plaintiff's suit stems from an ongoing child custody and protection case in which Plaintiff, the biological father, is unhappy with both the process and the result of past and current state judicial decisions. Although it is possible for federal jurisdiction to attach where a litigant presents an *independent* claim that merely relates to a child custody case, *see Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 Fed. App'x 285, 287-290 (6th Cir. 2007), a review of Plaintiff's allegations here refutes any possibility that such an exception to the state's exclusive domain of domestics relations jurisdiction would apply.

For example, Plaintiff alleges that his children suffered abuse or had "incident

---

[7]Some of Plaintiff's claims appear to be stated on behalf of his children. However, a *pro se* plaintiff may only appear on behalf of his own interests. *Shepherd v Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); "[I]n a civil rights action, parents cannot appear *pro se* on behalf of their minor children because a minor's cause of action is her own and does not belong to her parent or representative." *Crawford v. Child Protective Services*, 2007 WL 2772740 *3 (W.D. Ky. Sept. 20, 2007)(quoting *Shepherd* at 970).

6

reports" generated on at least two occasions during a time period that they were housed in interim foster care, and that Defendants Sams and Daniel "and the court never give me those incident repport, if requested and aksed several time, no answer." (Doc. 17 at 15, errors uncorrected). The state court is not a named defendant, nor could it be. It is impossible to ascertain from his allegation whether Plaintiff is alleging some type of due process right to a copy of the alleged reports from the identified two individual Defendants, and/or under what circumstances such a "right" might have been violated. Although Plaintiff's allegations are often difficult to decipher, this particular allegation of procedural impropriety, such as it is and standing alone, is insufficient to invoke the jurisdiction of this Court.

Plaintiff also alleges in some global sense that Defendants failed "to follow the normal proceeding" because the state court placed Plaintiff's children in foster care and then returned them to their mother, rather than placing them with Plaintiff, their biological father. (Doc. 20 at 2). However, Plaintiff's repeatedly expressed concern with the state court's decisions in the custody proceedings falls squarely within the domestic relations exception, and fails to state any claim within this Court's limited jurisdiction.

Last, Plaintiff alleges that the state court's interim custody decision(s) have been influenced in part by the fact that a case worker, an unspecified "supervisor," the Guardian ad Litem, and the "ass prosecuting attorney" all "lied and fraud on court" [sic], (Doc. 17 at 8), by providing the state juvenile court with information concerning a "DV [domestic violence] conviction in Columbus in 2004 and Hamilton County in 2009," which information Plaintiff asserts was incorrect. (Doc. 20 at 2). Plaintiff contends that although he has been represented by counsel throughout the state court proceedings, when counsel spoke on

7

Plaintiff's behalf (presumably to correct the erroneous information), "no body lessen [sic] what she said." (*Id*.).  Again, at its core this allegation attacks the outcome of the state court proceedings and does not allege a violation of procedural due process or any other constitutional violation by any Defendant that could give rise to federal jurisdiction.

In short, this Court lacks subject matter jurisdiction because all of Plaintiff's claims fall exclusively within the jurisdiction of the state courts.  Plaintiff's conclusory references to violations of his civil rights are not sufficient—even if they did not merit dismissal under Fed. R. Civ. P. 12(b)(6)—to grant federal jurisdiction.  This Court cannot grant the relief Plaintiff seeks -  alteration of the state court's custody decision.  *Accord Ropelski v. Rairigh,* 886 F. Supp. 1356 (W.D. Mich. 1995)(holding that injunctive relief requested by biological father would run afoul of the interests safeguarded by the domestic relations exception to federal jurisdiction); *see generally Elk Grove United School Dist. v. Newdow,* 124 S.Ct. 2301. 2309 (2004)(Despite "rare instances in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue,... in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts."); *Ankenbrandt v. Richards*, 112 S. Ct. 2206 (1992)(narrowing the domestic relations exception, but affirming its continuing viability).

Therefore, Defendant's motion to dismiss for lack of subject matter jurisdiction should be granted.  *Accord Wilder v. Swann*, 2011 WL 4860041 *4 (E.D. Tenn. Oct. 13, 2011)(dismissing *pro se* plaintiff's civil rights case for lack of subject matter jurisdiction, where it was clear that claims arose solely out of divorce and custody proceedings); *McGhan v. Kalkaska County Dep't of Human Servs.*, 2009 WL 2170151 *9 (W.D. Mich.

July 20, 2009)("the court lacks jurisdiction over any claim by plaintiff that she suffered injuries resulting from the decisions made by Michigan's courts in child custody proceedings.").

**B. Motions to Dismiss for Failure to State a Claim**

To the extent that federal jurisdiction may be assumed over any of Plaintiff's claims, I recommend that the two pending motions to dismiss for failure to state a claim, filed by all Defendants, be granted. Construed liberally, Plaintiff's complaint could be read to assert claims under 42 U.S.C. § 1983,[8] 42 U.S.C § 1981,[9] and 42 U.S.C. § 1985.[10] Plaintiff expressly refers to §1981, and a reference to a violation of his civil rights under color of state law could be read as falling within the scope of §1983. Last, his allegations that various Defendants acted in concert or in some sort of conspiracy could be read as asserting a claim under §1985.

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in recent years, the Supreme Court has brought greater focus to that pleading standard, holding first in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007) that the "famous" no-set-of-facts formulation "has earned its

---

[8] In relevant part, 42 U.S.C. §1981 ensures the right of "[a]ll persons...to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." The statute expressly protects the referenced rights "against impairment by nongovernmental discrimination and impairment under color of State law."

[9] In relevant part, 42 U.S.C. §1983 prohibits "[a]ny person....under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia" from depriving any citizen of "any rights, privileges, or immunities secured by the constitution and law."

[10] 42 USC 1985(3) prohibits "two or more persons in any State or Territory" from conspiring "for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...."

9

retirement" and instituting a new standard that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" *Id.* at 1974. In *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Under *Iqbal,* a trial court evaluating a complaint must cipher out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" from legal conclusions that are supported by factual allegations. *Id.* The first step is to identify the elements of the plaintiff's claim, in order to determine which allegations are mere legal conclusions, as opposed to factual allegations entitled to the "assumption of truth." *Id.* at 1951 ("We begin...by identifying the allegations in the complaint that are not entitled to the assumption of truth"). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1965. The complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998)(internal quotation marks and additional citation omitted).

None of Plaintiff's allegations against any of the named Defendants survive the *Twombly* and *Iqbal* pleading standards. Plaintiff has failed to state any claim against any Defendant, even when all allegations are construed in the light most favorable to Plaintiff. *Pro se* complaints are held to a less rigorous standard than those drafted by attorneys, but the court is not required to discover or create a claim that is not pleaded. *Williams v.*

*Curtin,* 631 F.3d 380, 383 (6th Cir. 2011); *see also Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975). A plaintiff is still required to plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

### 1. § 1981 claim

Plaintiff's original complaint alleges that "CPS" and "their outside agencies" violated the First, Ninth, Fourth, Sixth, and Fourteenth Amendment rights of Plaintiff and his children, under 42 U.S.C. §1981. (Doc. 2 at 3). To state the obvious, Plaintiff has named eight individuals as defendants, but the entity "CPS" is not a named Defendant.

In any event, in his response to the Defendants' most recent motions to dismiss, Plaintiff alleges that his children were placed in foster care because of their race (Doc. 22 at 4), and that the Defendants (collectively) have treated him unfairly because of his race (*id.* at 2). However, the only factual allegation that pertains to Plaintiff's race is contained in Plaintiff's original complaint but omitted from the amended complaint. The allegation is that an attorney acting as Guardian ad Litem for Plaintiff's children (Defendant Marjorie Davis), referred to Plaintiff in one state court proceeding as "the Brown father" - a reference to which Plaintiff's counsel immediately objected.[11] (Doc. 12 at 4; Doc. 2 at ¶9). This lone allegation with respect to one Defendant is insufficient to support a §1981 claim against any of the other Defendants, or, for that matter, against Defendant Davis alone. Nowhere in the complaint or amended complaint does Plaintiff include any additional factual

---

[11] Defendants represent that Defendant Davis was using the words of Plaintiff's children, who refer to him as their "brown father" by way of distinguishing him from Christopher Engle, whom they also refer to as their "father." (Doc. 12 at 4, n.1).

allegations to support a violation of any constitutional right. Thus, Plaintiff has failed to state a claim under for which relief may be granted under 42 U.S.C. § 1981.

### 2. § 1983 claim

To prove his § 1983 claim against each of the Defendants, the plaintiff must show that the individual defendant acted under color of state law and violated the plaintiff's civil rights. *Smith v. Williams-Ash,* 520 F.3d 596, 599 (6th Cir 2008). When suing individual defendants, a plaintiff must "set forth clearly in [his] pleadings that [he is] suing the state defendants in their individual capacity for damages, not simply their capacity as state officials." *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002). One reason for that requirement is that the State of Ohio (or individuals named in their official capacities) may be entitled to sovereign immunity for any claim for monetary damages. *See generally Will v. Michigan Dep't of State Police,* 109 S. Ct. 2304 (1989). Counties and their officials are not entitled to sovereign immunity, but cannot be held liable under a theory of *respondeat superior*. *See Monell v. Dep't of Social Services*, 98 S.Ct. 2018 (1978). Thus, to the extent that Plaintiff intended to sue County employees in their official capacities, he also must show that his injury was caused by some county policy or custom - something that the instant complaint wholly fails to allege. *Id*.

Assuming that Plaintiff instead seeks relief against the identified Defendants in their individual capacities, the Defendants may be entitled to qualified or absolute immunity against § 1983 claims for actions performed within the scope of their employment. In fact, although Plaintiff has failed to identify the capacity in which any of the individual Defendants have been named, all eight Defendants are entitled to dismissal of all §1983

claims filed against them either on the basis of immunity, or because they did not act under color of state law.

For example, Defendant Marjorie Davis is the court appointed Guardian ad Litem (Doc. 2-5 at 3). Sixth Circuit case authority provides her with absolute immunity in that role. "[G]uardians ad litem are entitled to absolute quasi-judicial immunity for performing job duties that are a part of the judicial process," even if the plaintiff alleges that their testimony was false or that they conspired with others. *Kolley v. Adult Protective Servs.*, 786 F. Supp. 2d 1277, 1298-1299 and n. 19 (6th Cir. 2011) (*citing Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984)).

Defendant Mark Sauer is an Assistant Prosecuting Attorney. Prosecutors are entitled to absolute immunity from civil suits for damages under 42 U.S.C. §1983 for their actions in initiating a prosecution and in presenting a case. *See Imbler v. Pachtman*, 96 S.Ct. 984, 995 (1976). This extends to when a prosecutor acts in his prosecutorial role as an advocate for the State. *Burns v. Reed*, 111 S.Ct. 1934, 1942 (1991). Nothing in the Plaintiff's complaint alleges that Defendant Sauer acted outside the scope of his role as a prosecutor; therefore, he also is immune from suit under 42 U.S.C. §1983.

Defendants Smith, Ayoki, Hartwell, and Stafford are social workers involved (presently or in the past) in the HCJFS proceedings concerned with Plaintiff's children. "[U]nder certain circumstances, social workers are entitled to absolute immunity," the scope of which is akin to a prosecutor's immunity. *Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (*quoting Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000)(en banc). This absolute immunity applies when the conduct at the foundation of the complaint is intimately associated with the judicial phase of the

proceedings. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421-22 (6th Cir. 2001). The actions of social workers are protected by absolute immunity when they initiate proceedings related to child welfare, which extends to filing abuse petitions and complaints seeking custody, *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989), and to testimony, recommendations, and investigations given in court proceedings concerning the best interests of a child. *Pittman*, 640 F.3d at 725 (*citing Holloway*, 220 F.3d at 775). Because nothing in the complaint alleges any actions by any of the named social workers outside of the conduct protected by absolute immunity, Defendants Smith, Ayoki, Hartwell, and Stafford are entitled to dismissal of Plaintiff's § 1983 claims against them. *Accord, McIntosh v. Butler County Children's Servs. Bd.,* Case No. 1:09-cv-274-SAS-SKB, 2011 WL 6091764 (S.D. Ohio Sept. 2, 2011)(R&R adopted at 2011 WL 6100265).

The last two named Defendants are foster parent Lisa Daniel, and case manager Sarah Sams. Although these two defendants are not cloaked with immunity, neither can they be held liable for damages under §1983 because they are private individuals and not State actors subject to suit. *Lintz v. Skipski*, 807 F. Supp. 1299, 1305 (W.D. Mich. 1992)(holding that foster care parent was not a state actor, relying on *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1991), in which the Sixth Circuit applied the public function test, the state compulsion test, and the symbiotic relationship or nexus test in determining that a private, non-profit counseling and mental health services corporation that had government contracts was not a state actor). Other federal courts are in agreement. *Accord, Milburn by Milburn v. Anne Arundel County Dep't of Soc.Servs.*, 871 F.2d 474, 477 (4th Cir. 1989); *Leshko v. Servis*, 423 F.3d 337, 338 (3d Cir. 2005). Thus, Defendants Daniel and Sams are not state actors, and cannot be held liable under § 1983.

### 3. § 1985 claim

In order to establish a claim that Defendants conspired to violate his civil rights under 42 USC § 1985(3), Plaintiff must demonstrate "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Center for Bio-Ethical Reform, Inc., v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Vikilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). The complaint must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action," *Id.* (Internal quotation and additional citations omitted). The complaint "must be pled with some degree of specificity and...vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Id.*, (quoting *Gutierrez v. Lynch*, 862 F.2d 1534, 1538-39 (6th Cir. 1987)).

Plaintiff Abessolo alleges very little against Lisa Daniel and Sarah Sams other than that they failed to provide him with incident reports regarding his children, (Doc. 17 at 15), which has stressed his life and is a continuation of abuse against him. These facts are not sufficient to indicate that Daniel and Sams conspired to deprive Plaintiff of any protection, privilege, or immunity, or that he has been actually injured in person or deprived of property or a right or privilege of a citizen of the United States. Nor do the allegations against Daniel and Sams indicate any class-based discriminatory animus.

The allegations against the County Defendants are greater in number, but still fall short of what is required to establish a conspiracy claim under § 1985. In his original

complaint, Plaintiff alleges: (1) that the Guardian ad Litem Marjorie Davis perpetuates the children's denigrating nickname for him-"Brown Father"- in addition to stating that the children do not want to live with him (*see also* Doc. 17, Exh.1 at 17); (2) that the County Defendants presented a case plan in January 2010 that Plaintiff was not provided prior to the court hearing (Doc. 17 at 8); (3) that upon his objection to a proposed temporary custody plan, HCJFS falsely told him they would give him custody (Doc. 17 at 11); (4) that the case worker and Guardian ad Litem did not follow a court order and "get things done on time, to return the children to [Plaintiff]" (Doc. 17 at 12); (5) that at a September 2009 hearing, the County Defendants falsely alleged that Plaintiff had a domestic violence conviction; (6) that HCJFS asked him to complete certain services, but did not indicate which services or why he was required to complete them, (Doc. 17 at 13); and (7) that HCJFS violated his right as biological father to speak to his children every day when they cancelled his visitation rights. (Doc. 17 at 14).

These allegations, while alleging more facts than against Defendants Daniel and Sams, are not sufficient to support a claim for conspiracy under § 1985. Again, the only allegation that could relate to class-discrimination is the reference by Defendant Davis to Plaintiff as the "Brown Father," but Plaintiff Abessolo has not shown how this demonstrates class-based discriminatory animus by all Defendants, or alleged any other facts to support the existence of a conspiracy for the purpose of denying him any rights, privileges, or immunities. The County Defendants' work in the foster-care system and their work with the Guardian ad Litem does not mean that the County Defendants are engaged in a conspiracy against Plaintiff to deny him any rights, privileges or immunities. Plaintiff has not alleged sufficient material facts to state a valid § 1985 claim. Therefore, Defendants'

16

motions to dismiss should be granted.

### C. Alternative Motion to Stay

To be clear, I would hold that this Court lacks subject matter jurisdiction over Plaintiff's claims. To the extent that any jurisdiction exists based upon Plaintiff's conclusory references to federal statutes or various constitutional amendments, I recommend granting Defendant's motions to dismiss for failure to state any viable federal claim. Only if a reviewing court were to disagree with my prior analysis would it be necessary to reach the County Defendants' alternative motion to stay this proceeding until the conclusion of state juvenile court proceedings. To the extent that any reviewing court would reach that issue, I would recommend that the motion to stay be granted.

The doctrine of abstention indicates that a federal district court ought to abstain from deciding a claim that falls within the jurisdiction of the state courts where there is no evidence that "a definitive ruling in the state courts cannot be pursued with full protection of the constitutional claim." *Railroad Comm'n of Tex. v. Pullman Co*., 61 S.Ct. 643, 645 (1941). The abstention doctrine has been applied to family law cases, so long as the litigants can present their constitutional objections to the state court, fail to present "extraordinary circumstances" that would render the doctrine inapplicable. *Moore v. Sims*, 99 S.Ct. 2371, 2378-2381 (1979). "The Sixth Circuit has held that *Younger* abstention is appropriate 'when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims.'" *Eidson v. State of Tenn. Dept. of Children's Services*, 510 F.3d 631, 639 (6th Cir. 2007)(quoting *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006)). Thus, *"Younger* abstention has been applied when there was a pending state court child abuse

proceeding." *Eidson* at 638 (citing *Sims,* 99 S.Ct. at 2377).

Mr. Abessolo's claims clearly are grounded in his desire to obtain custody of his children. Plaintiff's children are currently in the care of their biological mother, under the supervision of the Hamilton County Family and Jobs Services. A final judicial determination of custody remains pending. As the Supreme Court first held in *Burrus*, matters involving the familial relationship are better left to the state, 10 S.Ct. at 853, and the issue of child custody falls squarely within that interest. Finally, although I have determined that Plaintiff presents no genuine constitutional claims, there is nothing in the record to indicate that Plaintiff would be denied the opportunity to present any constitutional claims in state court if any viable claim should arise in the future. Thus, the *Younger* abstention doctrine applies, and the circumstances of this case present good reason for following the doctrine. To the extent that the Court does not entirely dismiss Plaintiff's complaint, the Court should grant the County Defendants' alternative motion to abstain until the underlying state issue has been resolved.

**D. Plaintiff's Motion for Default Judgment**

Plaintiff's motion for default judgment is based upon a fundamental misunderstanding of the Federal Rules of Civil Procedure. By filing motions to dismiss under Rule 12(b) in lieu of an answer, the record reflects that all Defendants timely and properly responded to Plaintiff's original and amended complaints.[12] In addition, to the extent that Plaintiff seeks entry of default judgment against Defendant Sams' employer, ENA, Inc., d/b/a Necco, that entity has never been served or listed as a defendant in this

---

[12] As this Court previously noted in its October 11, 2011 Order (Doc. 9), summonses were not issued for any of the named defendants until October 3, 2011 and the Court's records do not reflect which if any of the defendants actually received the summonses.

18

case. Therefore, Plaintiff is not entitled to entry of judgment in his favor.

### IV. Conclusion and Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED THAT:**

1. Defendants' first two motions to dismiss (Docs. 11, 12) be **DENIED AS MOOT** in light of the filing of Plaintiff's amended complaint;

2. Plaintiff's motion for default judgment (Doc. 13) be **DENIED**;

3. The motion of Defendants Sams and Daniel to dismiss for lack of subject matter jurisdiction (Doc. 18) be **GRANTED**, and the alternative motion for a more definite statement be **DENIED**. To the extent that subject matter jurisdiction is assumed to exist over any of the claims presented, the motion of Defendants Sams and Daniel to dismiss on the alternative ground of failure to state a claim (Doc. 18) and the motion of the County Defendants to dismiss on the same basis (Doc. 19) should be **GRANTED**;

4. If the presiding district judge should decline to adopt the recommendation for dismissal under paragraph 3 of this Report and Recommendation, then the motion of the County Defendants to stay this action pending final resolution of related state court custody proceedings (Doc. 19) should be **GRANTED;**

5. In accordance with paragraph 3, this case should be **CLOSED.**

      *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

19

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| FRANCOIS ABESSOLO, | Case No. 1:11-cv-680 |
| Plaintiff, | Spiegel, J.<br>Bowman, M.J. |
| v. | |
| SARA SMITH, et al., | |
| Defendants. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).